267 A.2d 730.

RUTH S. HALPERT *vs.* MARTIN G. ROSENTHAL.

JULY 20, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

408

KELLEHER, J. This is a civil action wherein the plaintiff vendor seeks damages for the breach by the defendant ven-

dee of a contract for the sale of real estate. The defendant filed a counter-claim in which he sought the return of his deposit. A jury trial was held in the Superior Court. The jury found for the defendant and judgment followed. The case is before us on the plaintiff's appeal.

On February 21, 1967, the parties hereto entered into a real estate agreement whereby plaintiff agreed to convey a one-family house located in Providence on the southeasterly corner of Wayland and Upton Avenues to defendant for the sum of $54,000. The defendant paid a deposit of $2,000 to plaintiff. The agreement provided for the delivery of the deed and the payment of the balance of the purchase price by June 30, 1967.

On May 17, 1967, a termite inspection was made of the premises, and it was discovered that the house was inhabited by termites. The defendant then notified plaintiff that, because of the termite infestation, he was not going to purchase the property. The defendant did not appear for the title closing which plaintiff had scheduled for June 30, 1967.

The plaintiff immediately commenced this suit. Her complaint prayed for specific performance or monetary damages. When the case came on for trial, the property had been sold to another buyer for the sum of $35,000. The plaintiff then sought to recover from defendant the $19,000 difference between the selling price called for in the sales agreement and the actual selling price. The defendant in his answer alleged that plaintiff and her agent had, during the preagreement negotiation, intentionally misrepresented the house as being free of termites. The defendant's counterclaim sought the return of the $2,000 deposit.

At the conclusion of the presentation of all the evidence, plaintiff made a motion for a directed verdict on the issue of the alleged fraudulent misrepresentations. The trial

justice reserved decision on the motion and submitted the case to the jury. After the jury's verdict, he denied the motion.

This case is unique in that plaintiff made no motion for a new trial. Her appeal is based for the most part on the trial court's refusal to direct a verdict in her favor on the counterclaim. She has also alleged that the trial justice erred in certain portions of his charge to the jury and in failing to adopt some 15 requests to charge submitted by plaintiff.

The absence of a motion for a new trial narrows the scope of an inquiry on appeal. Instead of being concerned with the credibility of witnesses or the weight of the evidence as we would be were we reviewing the usual motion for a new trial, we apply the standards applicable to a motion for a directed verdict. In doing so, it is our duty to consider all of the evidence and reasonable inferences deducible therefrom in the light most favorable to defendant. *Cofone* v. *Narragansett Racing Ass'n, Inc.*, 103 R. I. 345, 237 A.2d 717; *Gramolini* v. *Marzalkowski*, 102 R. I. 85, 228 A.2d 537.

Since we consider only the evidence favorable to defendant, we shall set forth defendant's version of three different occasions in 1967 when the alleged misrepresentations relative to absence of any termites were made.

1. In early February, defendant and his wife inspected the Halpert home. They asked the agent about termites and he told them that there was no termite problem and that he had never experienced any termite problem with any of the houses he sold in the East Side section of Providence.

2. Later on in February, defendant, his wife, his sister-in-law and his brother-in-law met plaintiff. The brother-in-law inquired about the presence of termites; plaintiff said that there were no termites in the house.

3. When defendant was about to sign the purchase and sales agreement, he asked plaintiff's real estate agent whether it might not be advisable if the home be inspected for termites before the agreement was signed. The agent told defendant that such a step was unnecessary because there were no termite problems in the house.

The plaintiff contends that any statements or representations attributed to her or her agent were qualified in that when asked about the termites, they replied that to the best of their knowledge or experience the Wayland Avenue property was termite free. What she overlooks is that in our consideration of the correctness of the denial of her motion for a direction, we can consider only that evidence and the reasonable inferences flowing therefrom which favor defendant. We do not weigh the evidence to determine whether her or her agent's representations were qualified or unqualified.

In contending that she was entitled to a directed verdict, plaintiff contends that to sustain the charge of fraudulent misrepresentation, some evidence had to be produced showing that either. she or her agent knew at the time they said there were no termites in the house, that such a statement was untrue. Since the representations made to defendant were made in good faith, she argues that, as a matter of law, defendant could not prevail on his counterclaim.

The defendant concedes that there was no evidence which shows that plaintiff or her agent knowingly made false statements as to the existence of the termites but he maintains that an innocent misrepresentation of a material fact is grounds for rescission of a contract where, as here, a party relies to his detriment on the misrepresentation.

We affirm the denial of the motion for a directed verdict.

The plaintiff, when she made her motion for a directed verdict, stated that her motion was restricted to the issue

412

of "fraud." The word "fraud" is a generic term which embraces a great variety of actionable wrongs. *LaCourse* v. *Kiesel,* 366 Pa. 385, 77 A.2d 877. It is a word of many meanings and defies any one all-inclusive definition. Fraud may become important either for the purpose of giving the defrauded person the right to sue for damages in an action for deceit or to enable him to rescind the contract. 12 Williston, *Contracts* §1487 at 322 (Jaeger 3d ed. 1970). In this jurisdiction a party who has been induced by fraud to enter into a contract may pursue either one of two remedies. He may elect to rescind the contract to recover what he has paid under it, or he may affirm the contract and sue for damages in an action for deceit. *Goodwin* v. *Silverman,* 71 R. I. 163, 43 A.2d 50; *Robinson* v. *Standard Stores, Inc.,* 52 R. I. 271, 160 A. 471; *Moran* v. *Tucker,* 40 R. I. 485, 101 A. 327.

The distinction between a claim for damages for intentional deceit and a claim for rescission is well defined. Deceit is a tort action, and it requires some degree of culpability on the misrepresenter's part. Prosser, *Law of Torts* (3d ed.) §100. An individual who sues in an action of deceit based on fraud has the burden of proving that the defendant in making the statements knew they were false and intended to deceive him. *Cliftex Clothing Co.* v. *DiSanto,* 88 R. I. 338, 148 A.2d 273; *Conti* v. *Walter Winters, Inc.,* 86 R. I. 456, 136 A.2d 622. On the other hand, a suit to rescind an agreement induced by fraud sounds in contract. It is this latter aspect of fraud that we are concerned with in this case, and the pivotal issue before us is whether an innocent misrepresentation of a material fact warrants the granting of a claim for rescission. We believe that it does.

When he denied plaintiff's motion, the trial justice indicated that a false, though innocent, misrepresentation of a fact made as though of one's knowledge may be the basis for the rescission of a contract. While this issue is one of

first impression in this state, it is clear that the trial judge's action finds support in the overwhelming weight of decisional and textual authority which has established the rule that where one induces another to enter into a contract by means of a material misrepresentation, the latter may rescind the contract. It does not matter if the representation was "innocent" or fraudulent.

In 12 Williston, *supra,* §1500 at 400-01, Professor Jaeger states:

> "It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, for though the representation may have been made innocently, it would be unjust and inequitable to permit a person who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations."

This statement of law is in accord with Restatement of Contracts, §476 at 908 which states:

> "Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation, the transaction is voidable as against the latter * * *."

Misrepresentation is defined as

> "* * * any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Restatement of Contracts, §470 at 890-91.

The comment following this section explains that a misrepresentation may be innocent, negligent or known to be false. A misrepresentation becomes material when it becomes likely to affect the conduct of a reasonable man with reference to a transaction with another person. Restatement of Contracts, §470 (2) at 891. Section 28 of Restatement of Restitution is also in accord with this proposition of law that a transaction can be rescinded for innocent mis-

representation of a material fact. In addition, many courts have also adopted this rule including the following: *Lehnhardt* v. *City,* 105 Ariz. 142, 460 P.2d 637; *Prudential Ins. Co.* v. *Anaya,* 78 N. M. 101, 428 P.2d 640; *Lanners* v. *Whitney,* 247 Ore. 223, 428 P.2d 398; *Hudspeth* v. *Zorn,* (Mo.) 292 S.W.2d 271; *Keeton Packing Co.* v. *State,* (Tex.) 437 S.W.2d 20; *Chesapeake Homes, Inc.* v. *McGrath,* 249 Md. 480, 240 A.2d 245; *Yorke* v. *Taylor,* 332 Mass. 368, 124 N.E.2d 912; *Whipp* v. *Iverson,* 43 Wis. 2d 166, 168 N.W.2d 201; *Seneca Wire & Mfg. Co.* v. *A. B. Leach & Co.,* 247 N. Y. 1, 159 N.E. 700; *Berger* v. *Pittsburgh Auto Equipment Co.,* 387 Pa. 61, 127 A.2d 334.

In *Watkins* v. *Grady County Soil & Water Conservation District,* (Okla.) 438 P.2d 491, 495, the court ordered cancellation of an easement agreement that was procured by a material misrepresentation honestly made with no intent to deceive. The court reasoned that the question is "* * * not whether the representation is knowingly false, but whether the other party believed it to be true and thus was misled by such misrepresentations into making the contract."

In *Williams* v. *Benson,* 3 Mich. App. 9, 141 N.W.2d 650, the court indicated that relief would be available if there was in fact a misrepresentation, though made innocently, and if its deceptive influence was effective, the consequences to the plaintiff being as serious as though it proceeded from a vicious purpose. Citing *Converse* v. *Blumrich,* 14 Mich. 109, the court said that in determining whether relief is appropriate, courts must look to the effect of the untrue statement upon the person to whom it is made, rather than to the motive of the one making the representation.

In *Ham* v. *Hart,* 58 N. M. 550, 273 P.2d 748, the court in holding that the honesty and good faith of the person making misrepresentations is immaterial, quoted the fol-

lowing excerpt from 1 Story *Equity Jurisprudence* §272 (14 ed.):

> " 'Whether the party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive; for it operates as a surprise and imposition upon the other party.' " 58 N. M. at 552, 273 P.2d at 749.

It is true that some courts require proof of knowledge of the falsity of the misrepresentation before a contract may be invalidated. *Wilkinson* v. *Appleton,* 28 Ill. 2d 184, 190 N.E.2d 727; *Classic Bowl, Inc.* v. *AMF Pinspotters, Inc.,* 403 F.2d 463; *Southern Roofing & Petroleum Co.* v. *Aetna Ins. Co.,* 293 F. Supp. 725. However, the weight of authority follows the view that the misrepresenter's good faith is immaterial. We believe this view the better one.

A misrepresentation, even though innocently made, may be actionable, if made and relied on as a positive statement of fact. The question to be resolved in determining whether a wrong committed as the result of an innocent misrepresentation may be rectified is succinctly stated in 12 Williston, *supra,* §1510 at 462 as follows:

> "When a defendant has induced another to act by representations false in fact although not dishonestly made, and damage has directly resulted from the action taken, who should bear the loss?"

The question we submit is rhetorical. The answer is obvious. Simple justice demands that the speaker be held responsible. Accordingly, we hold that here defendant vendee could maintain his counterclaim.

The plaintiff's second contention is to the effect that even if an innocent misrepresentation without knowledge

of its falsity may under certain circumstances entitle the misrepresentee to relief by way of rescission, defendant cannot maintain his action because the sales agreement contains a merger clause. This provision immediately precedes the testimonium clause and provides that the contract "* * * contains the entire agreement between the parties, and that it is subject to no understandings, conditions or representations other than those expressly stated herein." The plaintiff argues that in order to enable a purchaser to rescind a contract containing a merger clause because of a misrepresentation, proof of a fraudulent misrepresentation must be shown. We find no merit in this argument.

If, as plaintiff concedes, a merger clause, such as is found within the sales contract now before us, will not prevent a rescission based on a fraudulent misrepresentation,[1] there is no valid reason to say that it will prevent a rescission of an agreement which is the result of a false though innocent misrepresentation where both innocent and fraudulent misrepresentations render a contract voidable. See Restatement of Contracts, §476. As we observed before, the availability of the remedy of rescission is motivated by the obvious inequity of allowing a person who has made the innocent misrepresentation to retain the fruits of the bargain induced thereby. If we are to permit a party to rescind a contract which is the result of an innocent misrepresentation, the "boiler plate" found in the merger clause shall not bar the use of this remedy.

The plaintiff also makes much ado about the difference between what the vendee alleged in his counterclaim and what he proved at trial. She directs our attention to the

---

[1]In *Bloomberg* v. *Pugh Bros. Co.*, 45 R. I. 360, 121 A. 430, the contract contained a merger clause similar to the one before us. Such a provision, this court said, would not bar the introduction of evidence designed to show that the contract had been procured by fraud.

undisputed fact that defendant pleaded an intentional misrepresentation of fact, whereas at trial he adduced evidence which would show that the contract was signed because of the innocent misrepresentation about the termites.

While the difference between defendant's "allegata" and his "probata" might have had some significance in the days prior to the adoption of the new rules of civil procedure in the Superior Court, we observed in *Cofone* v. *Narragansett Racing Ass'n, Inc., supra,* that the common-law requirement that the proof conform to the pleadings is no longer the law in this jurisdiction. It has been negated, we said, by that portion of Rule 15 (b) which provides that where an issue is tried in a cause by the expressed or implied consent of the parties, it shall be treated in all respects as if it had been pleaded even in the absence of amendment. An examination of the record shows that at no time during the Superior Court trial did plaintiff make objection to the trial justice that defendant's evidence was at variance with his plea. The only objection lodged by plaintiff to defendant's evidence relative to the alleged misrepresentations was that it violated the provisions of the contract's merger clause. Later in the trial, plaintiff stated that she would show that defendant's failure to purchase her home was due to reasons other than the presence of the termites. We therefore hold that plaintiff's complaint of a variance between the pleading and the proof comes too late in this litigation to warrant any consideration.

Before leaving this phase of plaintiff's appeal, we think it appropriate that we allude to the tendency of many courts to equate an innocent misrepresentation with some species of fraud. Usually the word "fraud" connotes a conscious dishonest conduct on the part of the misrepresenter. Fraud, however, is not present if the speaker actually believes that what he states as the truth is the truth.

We believe that it would be better if an innocent misrepresentation was not described as some specie of fraud. Unqualified statements imply certainty. Reliance is more likely to be placed on a positive statement of fact than a mere expression of opinion or a qualified statement. The speaker who uses the unqualified statement does so at his peril. The risk of falsity is his. If he is to be liable for what he states, the liability is imposed because he is to be held strictly accountable for his words. Responsibility for an innocent misrepresentation should be recognized for what it is—an example of absolute liability rather than as many courts have said, an example of constructive fraud. See 12 Williston, *supra,* §1510; 1 Harper and James, *The Law of Torts* §7.7.

When we consider plaintiff's allegations as to the errors committed by the trial justice in charging or in failing to charge the jury, we note that in most instances she has failed to comply with that portion of Rule 51 of Super. R. Civ. P. which states that a person objecting to the giving of or failure to give certain instructions shall specifically state the grounds for his objection. This provision is designed to give the trial justice an opportunity to correct any error in his charge. While plaintiff has lodged numerous objections to the charge as given and to the court's failure to charge, she has in most instances given no reason for any of the objections made. We shall not consider any of the objections taken to the trial justice's failure to give the requested instructions, and we shall consider only those objections to the charge where there has been some attempt at compliance with the rule or where the reason for the objection is obvious. See *Paquin* v. *Providence Washington Ins. Co.,* 106 R. I. 267, 259 A.2d 115.

The plaintiff first contends that the trial justice failed to instruct the jury that the burden of proof as to the issue of misrepresentation was upon defendant. This argument

is without merit. At one point in his instructions the trial justice made this statement:

> "The defendant cannot avoid his contract unless you find, by a fair preponderance of the evidence, that a misrepresentation of fact was made to him by the plaintiff or her agent and that such a misrepresentation was material to the action here disputed."

While this portion of the charge did not specifically state that it was defendant's burden of proof to show that a misrepresentation had been made, in our opinion it adequately conveyed to the jury the obligation which this concept placed on the proponent of an issue. In addition, the trial justice earlier in his instructions had explained to the jury the phrase "preponderance of the evidence." Although the instructions are somewhat cryptic, the jury's verdict is proof positive that defendant had convinced the jury that the representations attributed to plaintiff had been made.

The plaintiff states that the trial judge should have instructed the jury that misrepresentations had to be proved by "clear and convincing evidence" and not by a "preponderance of the evidence" as they were charged. We disagree. Long ago in *Smith* v. *Rhode Island Co.*, 39 R. I. 146, 98 A. 1, we stated in clear and express language that fraud must be proved by a preponderance of the evidence, and there is no reason why we should require a higher degree of proof when the good faith of the misrepresenter is unquestioned.

The plaintiff complains that the trial justice erred when he told the jury that defendant could recover even though he might have been "negligent" in signing the sales agree-

ment.[2] The thrust of this objection is plaintiff's contention that either defendant's neglect to include in the contract a clause which would have protected his interest in the event termites were found on the property or his failure to have the premises inspected for termites prevents his recovery of the deposit. Such an argument is really aimed at the question of whether or not defendant was justified in relying on the representations made by plaintiff and her agent. We can see nothing patently absurd or ridiculous in the statements attributed to them which would warrant us in saying that defendant should be denied relief because of his failure to do what plaintiff now says he should have done. On the record before us, defendant was amply justified in believing that the home he was purchasing was free of termites.

The plaintiff's final objection on her appeal is directed toward the refusal of the trial justice to allow her in two instances to attempt to impeach the credibility of defendant by using his answers to interrogatories as evidence of a prior inconsistent statement. Rule 33 (b) provides that answers to interrogatories may be used at trial to the same extent as provided in Rule 26 (d) for use of the deposition of a party. This means, in effect, that answers to interrogatories can be used by an adverse party for any purpose, including impeaching the credibility of a party as a witness, subject, however, to the evidentiary rules of admissibility.

On cross-examination plaintiff attempted to impeach the credibility of defendant in accordance with the rules stated

---

[2]The plaintiff concedes that this court has permitted the victim of an intentional misrepresentation to recover even though he had failed to make any investigation into the truth or falsity of the statements made to him. *East Providence Loan Co.* v. *Ernest,* 103 R. I. 259, 236 A.2d 639; *Passarelli* v. *Boragini,* 76 R. I. 60, 68 A.2d 74; *Campanelli* v. *Vescera,* 75 R. I. 71, 63 A.2d 722.

above by showing that in answering interrogatories propounded to him, defendant stated that misrepresentations as to termites were made to his mother-in-law during the negotiation period. We note, however, that in direct examination, defendant made no reference · whatsoever as to what was said or not said to his mother-in-law regarding termites. Whether cross-examination should be permitted beyond those matters testified to by a witness on direct examination is a matter vested within the sound discretion of the trial judge and his exercise thereof will not be disturbed except upon a clear showing of an abuse of such discretion. *State* v. *Campbell*, 95 R. I. 370, 187 A.2d 543. The question propounded by plaintiff was not in cross-examination of anything testified to by defendant in direct examination. On the record before us we can see no abuse of the trial court's discretion. See *Vingi* v. *Trillo*, 77 R. I. 55, 73 A.2d 43.

Thereafter, later in the trial, plaintiff called defendant to the stand under the adverse party rule, G. L. 1956 (1969 Reenactment) §9-17-14, and attempted a second time to introduce the interrogatories for impeachment purposes. Again, the trial justice prohibited this line of questioning. Without making a determination as to the validity of this procedure under the adverse party rule, we find that there was no error. In *Urbani* v. *Razza*, 103 R. I. 445, 449, 238 A.2d 383, 386, we held that an exclusion of evidence, even if wrongful, will not suffice for a reversal unless the evidence excluded "* * * was relevant and material to a crucial issue and if it can with reason be said that such evidence, if admitted, would properly have influenced the verdict or had a controlling influence on a material aspect of the case."

As we have noted above, the record clearly discloses considerable evidence pertinent to the misrepresentation issue. Even if we were to assume that the exclusion of the in-

terrogatories was improper, we are unable to say that it would have had such a substantial influence on the jury, if admitted, as to cause it to return a contrary verdict to that which it did. See *Romanelli* v. *A. B. C., Inc.,* 104 R. I. 689, 248 A.2d 598.

The appeal of the plaintiff is denied and dismissed, and the case is remanded to the Superior Court for entry of judgment thereon.

Motion for reargument denied.

*Alfred M. Silverstein,* for plaintiff.

*Leonard Decof,* for defendant.