**Joseph V. CAMBROLA, Jr.**

v.

**KAISER ALUMINUM & CHEMICAL CORP.**

No. 77–364–Appeal.

Supreme Court of Rhode Island.

July 15, 1980.

Raul Lovett, Providence, for petitioner.

Bruce Morin, Providence, for respondent.

## OPINION

KELLEHER, Justice.

This is an employee's appeal from a decree of the Workers' Compensation Commission vacating a decree of a trial commissioner which set aside an agreement calling for the suspension of compensation benefits on the ground that the agreement was obtained by fraud. Hereinafter we shall refer to the employee as "Cambrola" and the employer as "Kaiser."

On January 29, 1971, a forklift truck rolled onto Cambrola's left foot, causing an "extensive bruise." Later, in February of 1971, Cambrola and Kaiser entered into a preliminary agreement whereby Cambrola was to receive compensation benefits for the duration of his total incapacity. When Cambrola returned to work in April of 1971, Kaiser terminated all benefits. Five years later, Cambrola was on the job when Michael Ferrara (Ferrara), Kaiser's safety supervisor, came by and, according to Cambrola, asked him whether he was going to attend a forthcoming meeting of the board of directors of the employees' credit union. Ferrara also explained to Cambrola that he, Ferrara, had "taken over Jim Travis's job." Some of Travis's unfinished chores included the execution of a number of so-called sus-

pension agreements with employees such as Cambrola who, after receiving weekly compensation benefits, had returned to work at Kaiser at a salary equal to, or perhaps greater than, that which they had been receiving at the time of their injuries.

Once Ferrara finished talking about the upcoming directors' meeting, he presented Cambrola with a paper that Travis "was supposed to have you sign." Cambrola signed the paper, assuming that it had to do with some partial compensation payments due him for some other injury. Actually, Cambrola had signed an agreement calling for the suspension[1] as of April 1971 of all compensation payments due him as the result of the January 1971 encounter with the forklift. Cambrola testified that following the obtaining of his signature, Ferrara advised him, "[T]his won't bar any claims in the future." The agreement was subsequently approved by the director of labor.

At the hearing before the trial commissioner, Cambrola conceded that he had taken a number of business-related courses at Brown University and the University of Rhode Island. He blamed his predicament on his failure to have his reading glasses with him at the work station and Ferrara's lack of any explanation in regard to what the paper was all about.

Ferrara's version of what happened at the signing differed completely from the picture presented by Cambrola. He denied that they initially discussed credit-union affairs or that he failed to explain the agreement. Ferrara testified that he had told Cambrola that he had an outstanding suspension agreement that required his signature. He both described and read the contents of the document to Cambrola, explaining that the agreement would not foreclose any future claims if a future incident arose out of the injury.

In his decision, the trial commissioner noted that there was a "direct conflict of evidence" in which "[b]oth parties appear[ed] worthy of belief as they were testifying." The commissioner noted that "Ferrara has testified before this commission on many occasions and I have always found him to be above reproach." However, he determined that the agreement was procured by fraud on the basis of the following information that was not placed into evidence by either party:

> "[T]here is one fact which to my mind must control my decision in this case. That is, that for the past year or so, innumerable petitions have been filed by employees of the Kaiser Aluminum & Chemical Company alleging that the Kaiser Aluminum & Chemical Company was in contempt for failure to continue to pay compensation under the provisions of outstanding preliminary agreements. Apparently James Travis failed to have compensation settlement receipts executed in many cases where an employee had returned to work and unilaterally suspended further payment of compensation without legal justification. It is inconceivable to me that the petitioner [Cambrola] did not know of the fact that such cases had been filed and were pending, especially in view of the various official capacities he held as an employee of Kaiser * * *."[2]

In rejecting the trial commissioner's finding of fraud, the full commission determined that there was no evidence indicating that Cambrola was fraudulently induced to believe that the agreement he signed dealt with partial incapacity benefits for an unrelated injury. Cambrola had therefore not met his burden of proving fraud.

■ Cambrola contends that since the trial commissioner necessarily adopted his testimony and rejected that of Ferrara in

---

1. The document upon which Cambrola's signature appears is a form prepared by the State of Rhode Island and entitled "Workmen's Compensation Suspension Agreement and Receipt." The validity of the use of such agreement was recognized by this court in *Walker v. Kaiser*

*Aluminum & Chemical Corp.*, R.I., 382 A.2d 173 (1978).

2. In light of our disposition of this case, the issue of whether the trial commissioner properly took judicial notice of these facts will not be discussed.

finding fraud, the full commission, in overturning the trial commissioner's decision, exceeded the scope of its review as defined in *Laganiere v. Bonte Spinning Co.*, 103 R.I. 191, 236 A.2d 256 (1967), by usurping the issue of the witnesses' credibility. The simple answer to this argument is that *Laganiere* is inapplicable to the circumstances presented in the case before us. In *Laganiere*, we discussed the appropriate procedure to be followed by the commission in reviewing the trial commissioner's resolution of factual issues. Restating the proposition that a factfinder's determination of credibility should be entitled to great weight on review, we concluded that before the commission could weigh the evidence or determine where its fair preponderance lies, it must first find that the trial commissioner was clearly wrong in his determination of a witness's credibility. Cambrola gains no comfort, however, from *Laganiere*, for the commission in the case before us ruled on a question of law, that is, whether the evidence presented was legally sufficient to make out a case for fraud. *Rees v. Craighead Investment Co.*, 251 Ark. 336, 472 S.W.2d 92 (1971); *see Simeone v. Prato*, 82 R.I. 496, 111 A.2d 708 (1955).

■■ In determining this legal issue, the commission reviewed Rhode Island law with respect to the meaning of fraud and correctly concluded that the plaintiff has the burden of proving that the defendant intentionally made a false representation designed to induce the plaintiff to rely thereon and that the plaintiff did indeed rely upon the misrepresentation to his detriment. *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730 (1970); *Cliftex Clothing Co. v. DiSanto*, 88 R.I. 338, 148 A.2d 273 (1959). Examining the record in the light of this definition, the commission concluded,

> "A close scrutiny of the Transcript does not reveal any testimony on the part of either party to this conversation that there was any mention by the petitioner or Mr. Ferrara of the word 'partial' compensation. It appeared this was solely an assumption on the part of the petitioner five (5) years later that the form he was

signing was for the payment for partial incapacity. We do not find any evidence or testimony from the petitioner that he mentioned 'partial' incapacity to Mr. Ferrara or did he inquire of Michael Ferrara whether the form he was signing was for partial compensation benefits."

Our review of the record yields a similar conclusion. Although Cambrola may have genuinely believed the suspension agreement dealt with partial incapacity benefits for a different injury, there is nothing in his testimony to indicate that Ferrara either intentionally misrepresented this notion to him or remained silent knowing of Cambrola's mistaken supposition.

■ Following the commission's determination that Cambrola had presented no evidence of fraud on the part of Ferrara, it stated that he had not met his burden of proving fraud by clear and convincing evidence. As Cambrola correctly argues, however, fraud in a civil suit need only be proven by a fair preponderance of the evidence. *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730 (1970); *Smith v. Rhode Island Co.*, 39 R.I. 146, 98 A. 1 (1916). This error does not warrant our reversal of the commission's decision, for it was based on Cambrola's failure to produce any evidence of fraud. Thus, even if the commission had applied the standard of a fair preponderance of the evidence, the result would remain the same.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission for further proceedings.