DECISION
This is an appeal from a decision of the Coastal Resources Management Council (CRMC). The plaintiffs, Anthony and Beatrice Marcello, are appealing the December 16, 1994 decision revoking a Maintenance Certificate issued on May 26, 1994 to repair the plaintiffs' floating dock. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
Facts/Travel
On April 28, 1994, the Marcellos filed a Maintenance Certification Request with CRMC to repair a floating dock that had previously existed at their home on Mackerel Cove in Jamestown, Rhode Island. The dock was originally built pursuant to a July 1967 Assent from the Rhode Island Division of Harbors and Rivers and a permit from the Department of Army Corps of Engineers. The dock consisted of a stone jetty, permanent stanchions, as well as, a removable dock, floats, and mooring piles that were removed at the end of each season. The dock was damaged during coastal storms in approximately 1980 and was rebuilt, but was destroyed again around 1985. In the summer of 1993, the remainder of the floating dock was destroyed. Though the stanchions were cut below the water line, the stone jetty and stanchions remained.
The plaintiffs' April 28, 1994 application included the following: a letter from the Tax Assessor of the Town of Jamestown, a five hundred dollar filing fee, an engineer's proposal, a July 1967 permit by the Army Corp of Engineers, and an affidavit by Mr. Marcello dated April 22, 1994. Mr. Marcello's affidavit stated that, "At some point in time, these structures were damaged by the elements and rendered unusable and in the summer of 1993, whatever was left was discarded." After receiving the application, CRMC conducted a site inspection. The property was inspected by Doris Aschman, a CRMC staff engineer, and James Boyd, Jr., a staff biologist, who cited no objection to the Marcellos' permit application. After this inspection and review of the application materials, the Maintenance Certificate was issued on May 26, 1994 by CRMC Executive Director, Grover Fugate. Once receiving the Certificate, the Marcellos recorded the permit in the Land Evidence Records on June 7, 1994; received a building permit from the Town of Jamestown; and entered into a contract with Rhode Island Mooring Services, Inc. to perform the necessary site work. Furthermore, the Marcellos made initial payments under that contract and work commenced with a site survey and stakes placed in the ground.
After work began, plaintiffs received written notice on September 16, 1994 of a hearing that would be held before the CRMC Dock Subcommittee on September 20, 1994. This hearing was scheduled to determine if the full Council should decide whether the Maintenance Certificate was erroneously issued. The CRMC deemed this hearing necessary after an investigation by CRMC officials subsequent to its receiving complaints from neighbors. (Tr. at 10.) The plaintiffs appeared before the Dock Subcommittee and objected to the hearing. After the hearing, the Subcommittee recommended a full CRMC Board hearing.
The plaintiffs received written notice of the September 27, 1994 full Council hearing on September 22, 1994. The plaintiffs then filed a complaint in Superior Court seeking a temporary restraining order to enjoin the CRMC from hearing the matter. The court enjoined CRMC from holding the September 27, 1994 hearing because CRMC had failed to provide sufficient notice as required by law.
Once notice was properly received, the Maintenance Certificate was reviewed by CRMC on October 11, 1995. At the hearing, CRMC heard from Mrs. Marcello in support of the Maintenance Certificate, and from James Hass and Thomas Todd, former abutters, and Executive Director Fugate, who were seeking a revocation of the permit. Mrs. Marcello initially indicated that the floating dock was probably destroyed in excess of fifty percent, but she later indicated that she could not be certain about the extent of damage. (Tr. at 20-22, 55-56.) Furthermore, Mrs. Marcello agreed with one Council member's assertion that the dock had not been in continuous use since 1985. (Tr. at 56.) She also testified that they had complied with all CRMC application requirements and expended money in reliance on the issuance of the Maintenance Certificate. (Tr. at 50-51.) Mrs. Marcello also indicated that CRMC officials never asked or indicated that the dock needed to be in continuous use. Mr. Hass and Mr. Todd testified that, to their recollection, it had been approximately fifteen years since a dock was present. (Tr. at 39-47.) Furthermore, the dock was never properly registered pursuant to Section 100 of CRMC's Dock Registration Program. (Tr. at 49-50.)
With these facts before the Council, CRMC found that the plaintiffs did not meet their evidentiary burden for issuance of a maintenance certificication and/or reconstruction of a previously destroyed residential boating facility that has not been in continuous use since prior to 1985. CRMC Decision at 6. The plaintiffs' Maintenance Certification request conflicts with the approved and adopted CRMP. Id. Therefore, CRMC revoked the plaintiffs' Maintenance Certificate as being erroneously granted by CRMC. Id.
Standard of Review
The court's review of a CRMC decision is controlled by G.L. 1956 § 42-35-15 (g) which provides that when reviewing a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.,694 A.2d 722 (R.I. 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority v. Rhode Island Labor RelationsBoard, 650 A.2d 479, 185 (R.I. 1994).
Revocation of a Maintenance Certificate
The CRMC's procedures for awarding and revoking a maintenance certificate are governed by the Coastal Resources Management Program (CRMP) and CRMC Procedures. Section 300.14 of the CRMP governs the maintenance of structures including the "rebuilding, reconstruction, repairing or establishing to previously assented conditions and dimensions a damaged or deteriorated structure or facility." CRMP at 300.14.A. For those structures now within CRMC's jurisdiction, but predating the Council, "Persons proposing to maintain or repair activities on such structures shall be required to obtain a Certification of Maintenance, meet relevant standards of this program, or obtain a Council Assent, as determined by the Council's Executive Director." CRMP at 300.14.B.5.
The standards that must be met to receive a Maintenance Certificate are found in CRMP Section 300.4, which regulates recreational boating facilities. Initially, owners of floating docks are "required to maintain their facilities in good working condition. Facilities may not be abandoned. The owner shall remove from tidal water and coastal features any structure or portions of structures which are destroyed in any natural or man-induced manner." CRMP at 300.4.E.3 (m). Also, "Routine maintenance of an existing private recreational boating facility previously authorized by a Council Assent shall require a Certification of Maintenance in accordance with the requirements of Section 300.14 of this program." CRMP at 300.4.E.3 (s). However, dock owners seeking "[r]epair or reconstruction of all structures that are physically destroyed 50% or more by wind, storm surge, waves or other coastal processes shall require a new Council Assent." CRMP at 300.4.B.6.
The CRMC interprets these rules and regulations to require those seeking a Maintenance Certificate to continuously use their residential boating facility. (Tr. at 34-35, 54.) It is well established that an agency is given broad discretion in interpreting its own rules and regulations particularly when interpreting environmental regulation. Defenders of Animals v.Dept. of Env. Mgt., 553 A.2d 541, 543 (R.I. 1989). Furthermore, when a term such as continuous is not defined, courts will often apply the common, recognized dictionary meaning. Id. Continuous is defined as uninterrupted in time; without cessation. TheRandom House Dictionary of the English Language 440 (2d ed. 1987).
An applicant for a Maintenance Certificate must submit "a valid Council Assent, dimension and/or site plans, photographs, or other information as required to make a proper determination of the nature of the request." CRMP at 300.14.C. When all relevant materials are submitted, CRMC staff members must conduct a site investigation to determine if a Maintenance Certificate should be awarded. Even after a Maintenance Certificate is issued,
 "The Council may revoke a permit for noncompliance with or violation of its terms after written notice of intention to do so has been given the holder, and the holder, in return, has given the opportunity to present evidence to the contrary to the Council. Financial hardship on the part of a holder shall not be a defense to the revocation of a permit. The Council may also revoke a permit if it finds that the holder or his agent submitted relevant false information to the Council." 3 CRIR 8.4, Rule 04000 002 at 15 (1997).
If the Council is induced to grant a Maintenance Certificate through a petitioner's misrepresentation, then the Council may revoke the Maintenance Certificate under Rule 8.4. A misrepresentation is "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Halpert v.Rosenthal, 107 R.I. 406; 267 A.2d 730, 734 (1970). A misrepresentation may be innocent, negligent or known to be false. A misrepresentation becomes material when it becomes likely to affect the conduct of a reasonable person with reference to a transaction with another person. Id.
In complying with the CRMP application requirements to receive a Maintenance Certificate, Mr. Marcello included an affidavit regarding the history and use of their floating dock. In that affidavit Mr. Marcello stated that, "At some point in time, these structures were damaged by the elements and rendered unusable and in the summer of 1993, whatever was left was discarded." Though Mr. Marcello's statement was ambiguous and warranted further inquiry by CRMC officials, CRMC issued the Maintenance Certificate. After its issuance, evidence was brought forth by abutting property owners suggesting that there had not been a dock present and in continuous use for approximately fifteen years. At the full CRMC hearing, Mrs. Marcello made two candid statements indicating that misrepresentations had been made in the Maintenance Certificate application. At one point, Mrs. Marcello indicated that the dock had at some point probably been destroyed in excess of fifty percent by a coastal storm, (Tr. at 20-22.), and then she clearly indicated that the dock had not been in continuous use since 1985. (Tr. at 56.) These statements contradict Mr. Marcello's affidavit. Whether these misrepresentations were intentional or not is irrelevant. And the Court finds the statements to be material misrepresentations.(Halpert, Supra.)
The record evidences that the Marcello's dock clearly was not in continuous use, and that it was not registered under CRMC's dock registration program. (Tr. at 49-50.) Under this program, residential boating facilities must be registered to enhance permit tracking and enforcement capabilities. CRMC Dock Reg. Prog. Section 100.1 (G). Part of CRMC's policy in registering a residential dock is that it be "intact and currently in use." CRMC Dock Reg. Prog. Section 100.2 (A). Accordingly, the record supports a finding that the Marcellos have essentially abandoned their rights to the dock under CRMP Section 300.4.E(m). Furthermore, because plaintiffs' material misrepresentations induced the issuance of the Maintenance Certificate, the court finds revocation of the Maintenance Certificate to be justified as it was supported by competent evidence before CRMC.
After review of the entire record, this court finds that the decision of CRMC is supported by reliable, substantial, and probative evidence. This Court finds that there is no violation of constitutional, statutory, or regulatory provision; no excess of authority by the agency; and no procedural violations characterized by an abuse of discretion, such that substantial rights of the petitioner have been prejudiced. Accordingly, CRMC's decision is affirmed.
Counsel for the Agency shall submit the appropriate judgment for entry.