[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter was tried to the Court sitting without a jury on April 14, 2005. In accordance with Super. Ct. R. Civ. P. 52, the following constitutes the findings of fact and conclusions of law of the Court.[1]
A. Findings of Fact
1. Citizens Bank ("Citizens" or "Plaintiff") claims in its amended complaint that it is the "holder" of certain promissory notes made payable to Old Stone Bank, ("OSB") a federal savings bank.
2. Steven Petrarca has been a loan workout specialist and Vice President of Citizens Bank of Massachusetts for the past eight years. He became familiar with portions of a loan portfolio when he was assigned certain loans in connection with his workout responsibilities. Among the loans with which he became familiar was a demand loan originally from OSB made to C.J. Cross Associates, Inc. in the principal amount of $150,000. Mr. Petrarca has no personal knowledge as to the manner in which Citizens acquired the C.J. Cross note, but is aware that Citizens currently has possession of certain notes and guarantees associated with loans originally made to C.J. Cross Associates, Inc.
3. The loan to C.J. Cross Associates was evidenced by a promissory note payable to OSB.
4. The obligations under the note to C.J. Cross Associates, Inc. were guaranteed personally by Martha and Willis Ennis and by Carville J. Cross, Jr. and Isabel A. Cross. Mr. Cross is the Defendant herein; Isabel Cross is the former wife of the Defendant.
5. As of December 24, 1992, the corporate obligation and the personal guarantees as recited above were in default. On that date, the Defendant acknowledged the default, and further acknowledged that as of November 17, 1992, the amount of principal and interest due and payable thereunder was in excess of $120,000.
6. On that date, the parties also executed a workout agreement. The essence of that agreement was that in exchange for the corporate borrower assigning to OSB its interest in certain loan participation agreements, OSB agreed to accept in lieu of the obligations under the original note and guarantees (which were then in default), new promissory notes from the guarantors, each in an amount equal to one-half of the compromised amount of indebtedness.[2]
7. At or about the same time that the workout agreement was entered, the two promissory notes identified in Paragraph 5 of the Agreement were signed. The Defendant, Carville J. Cross, Jr. signed the note which was admitted into evidence as Exhibit 4 (the "Cross Note"). That Note obligated Mr. Cross to pay $35,750 in accordance with a payment schedule contained in the Note, with final payment due on December 24, 1994. The Note was to bear interest at the rate of eight and one-half percent (8.5%) per annum. In the event of default, the Note was to bear interest at ten and one-half percent (10.5%). It was the intention of the original lender and Cross that the new Cross Note, together with the new Ennis Note, would supercede any existing obligations of C.J. Cross 
Associates, as well as the original guarantees of Cross and Ennis.
8. The Cross Note was contained in a portfolio of notes and other obligations which Mr. Petrarca believed was obtained by Plaintiff by way of a purchase of OSB assets from the Resolution Trust Corporation ("RTC") as Receiver of OSB. Also contained in that portfolio which was handed to Mr. Petrarca was the original $150,000 note (Exhibit 1), a copy of the workout agreement (Exhibit 3) and the original Ennis note (Exhibit 5). The original $150,000 Note bears an endorsement that reads "Pay to the Order of Citizens Savings Bank without recourse", and it is signed by "Resolution Trust Corporation, Receiver of Old Stone Federal Savings Bank." Neither the Ennis Note nor the Cross Note contain any endorsement, or has there been presented any written evidence of assignment or purchase of the Cross Note or Ennis Note by the Plaintiff.
9. The Cross Note, which forms the basis of Plaintiff's claims under Count II of the Amended Complaint,[3] is missing page 4 of the original eight pages. In comparing the Cross Note to the Ennis Note, it is clear that the two notes were identified in Paragraph 5 of the workout agreement, and were executed at or around the same date as part of the same workout transaction that is referenced in the workout agreement. A comparison of the two notes indicates that page 3 of each ends with the words "on the part of" and that page 5 of each begins with the numeral "3." and the words "The occurrence of any." In every respect, the two notes on pages 1 through 3, and pages 5 through 8 are identical.
10. Paragraph 2 of the Ennis Note references a choice of law provision (Rhode Island), and a consent by the borrowers to personal jurisdiction in the Courts of the State of Rhode Island. Although Mr. Cross testified that he has no recollection of ever seeing the missing page 4 of the Cross Note, he recalls having negotiated a choice of law and choice of forum provision that would make Virginia applicable in both instances. Neither the Plaintiff nor the Defendant has ever found the missing page 4, or a copy of the Cross Note containing the missing page 4. Defendant has submitted to the jurisdiction of this Court by proceeding to trial on the amended complaint and prosecuting a counterclaim in this forum.
11. The Defendant Cross admits that his original signature appears on the Cross Note, and that he has never made any payments under the Cross Note.
12. As of the time of trial, the outstanding balance due and owing under the Cross Note, exclusive of attorneys' fees and costs of collection, is $89,802.73.
B. Conclusions of Law
Whether the Plaintiff is entitled to payment under the Cross Note is governed by the provisions of the Uniform Commercial Code. Under applicable Rhode Island law[4] the Cross Note is a "negotiable instrument" as defined in G.L. 1956 § 6A-3-104.[5] As such, the person or entity who is in possession of the instrument may be considered a "person entitled to enforce" the instrument if it can be shown that the person is a "holder", or a "nonholder in possession of the instrument who has the rights of a holder." G.L. 1956 § 6A-3-301. The first option is not available to the Plaintiff since the evidence clearly establishes that the Cross Note was payable to an identified person and was not endorsed. If an instrument is payable to an "identified person" (as opposed to a "bearer"), negotiation requires both the transfer of possession and endorsement by the holder. G.L. 1956 § 6A-3-201(b). Negotiation of an instrument is required for a person in possession of the instrument to become a "holder." Accordingly, the Plaintiff is not a holder of the Cross Note.
The next inquiry, therefore, is whether the Plaintiff is a non-holder in possession who has the rights of a holder. In order to answer that legal question, reference must be made to Section 3-203 of the Uniform Commercial Code, which deals with rights acquired by transfer of an instrument. The pertinent provisions of this section are as follows:
 6A-3-203. Transfer of instrument — Rights acquired by transfer. — (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
 (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.
Official Comment, Paragraph 2 to Section 6A-3-203
provides as follows:
 "If the transferee is not a holder because the transferor did not endorse, the transferee is nevertheless a person entitled to enforce the instrument under section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. Because the transferee's rights are derivative of the transferor's rights those rights must be proved. Because the transferee is not a holder, there is no presumption under section 3-308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it." (emphasis added).
The evidence adduced at trial is insufficient to prove that the Plaintiff is entitled to payment under the Cross Note. Although the Plaintiff produced the original signed Cross Note at the trial (albeit missing page 4), and the Defendant admitted to his signature on the Note, the Plaintiff simply failed to produce any competent evidence to prove how Citizens Bank, the Plaintiff herein, acquired possession either from OSB, the original payee, or from the RTC, assuming that the RTC properly acquired the Cross Note. There are two layers of transfer that the Plaintiff has not accounted for through competent evidence. The only evidence of how the Plaintiff came into possession of the Cross Note is the testimony of an officer of a banking entity other than the Plaintiff[6] who testified that his responsibilities were to handle a portfolio of delinquent obligations, including the Cross Note.[7]
The Plaintiff offered no credible testimony, or any documentary evidence, tending to prove the transaction through which Citizens, as alleged transferee, acquired the Cross Note, what rights the alleged transferor, the RTC, had in the Cross Note, or how the RTC acquired the Note from OSB.
A case nearly identical to the instant dispute was decided by the United States Court of Appeals for the First Circuit, applying the UCC as applicable in Maine. In FDIC v. Houde, 90 F.3d 600 (1st Cir. 1996), the Court found that the FDIC, as alleged transferee of a promissory note from a failed financial institution, presented inadequate evidence to establish its right to payment under the note. Although it was stipulated that FDIC possessed the original note, that the borrowers' signatures were authentic, and that no payments had been made on the note, the note lacked an endorsement from the original payee. The Court found that the FDIC had failed to prove what happened to the note through proof of the various transactions through which it allegedly acquired lawful ownership, possession, and the right to payment. The FDIC did not have any documents to evidence the transfers or bank insolvency proceedings, and produced no witness competent to testify concerning the various transfers and receivership proceedings which the FDIC had argued formed the basis of its current ownership of the note. Id. at 606. Such failure of proof was fatal to the FDIC's claim.[8]
Similarly, the Plaintiff herein seems to argue that the bank officer's anecdotal testimony concerning the RTC's alleged takeover of OSB, coupled with the officer's testimony that he was handed a file which appeared to contain notes originally payable to OSB, is sufficient to satisfy its burden under the Uniform Commercial Code. Although the Court understands that a financial institution attempting to collect on a transferred negotiable instrument may find some difficulty in proving each transaction leading up to its current collection efforts, the burden should not be insurmountable. Based on the foregoing findings of fact and conclusions of law, the relief requested in Count II of the Amended Complaint is denied, and judgment thereon shall enter in favor of the Defendant.
Finally, the Defendant has filed a counterclaim which is in the nature of a claim for misrepresentation.[9]
Under Rhode Island law, a misrepresentation is "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Halpert v.Rosenthal, 107 R.I. 406, 413, 267 A.2d 730, 734 (1970) (quoting Restatement Contracts § 470 at 890-91). In addition, to establish a claim that a misrepresentation was fraudulent, the plaintiff must prove that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon" and that the plaintiff justifiably relied thereon to his or her damage. Cliftex Clothing Co. v. DiSanto, 88 R.I. 338, 344,148 A.2d 273, 275 (1959).
Although there is some evidence that the bank and/or its counsel initially made a demand for payment under the original guaranty, the Plaintiff subsequently filed an amended complaint wherein it added a claim for payment under the new Cross Note. At trial, the Plaintiff chose to dismiss the claim under the guaranty, and rely exclusively on the obligations set forth in the Cross Note. While this may show a lack of diligence in understanding the transaction which led to the workout and execution of the Cross Note, it is understandable that the transferee bank may not know all of the details relative to negotiations that transpired between Mr. Cross and OSB. Under the circumstances, the Defendant, as counterclaim plaintiff, has not introduced sufficient evidence to establish a viable claim for intentional or even negligent misrepresentation. In addition, there is a total lack of proof that Mr. Cross in any way relied on any alleged misrepresentation resulting in damage. Accordingly, the counterclaim is denied, and judgment thereon shall enter in favor of the Plaintiff.[10]
The parties are instructed to submit an appropriate form of judgment reflecting the decision of the Court.
[1] At the conclusion of the Plaintiff's case, the Defendant moved for judgment as a matter of law. The Court reserved its ruling on that motion, and offered the Defendant an opportunity to present its case. Thereafter, Defendant rested without presenting testimony. Accordingly, the Rule 52(c) motion will be subsumed in the Court's determinations as set forth in this decision in accordance with Rule 52(a).
[2] The collective liability of Carville J. Cross, Jr. and Isabel A. Cross was to be evidenced by one note; the collective liability of Willis B. Ennis and Martha B. Ennis was to be evidenced by another note. Ultimately, OSB was willing to accept the agreement and note signed only by Mr. Cross, on the one hand, and Mr. and Mrs. Ennis on the other.
[3] The original complaint set forth only a claim under Mr. Cross' guaranty of the corporate debt of C.J. Cross Associates, Inc. The Amended Complaint, filed on or about June 7, 2004, contained a second count relative to Mr. Cross' alleged liability under the Cross Note. The Plaintiff has agreed to dismiss with prejudice the Plaintiff's claims under Count I of the Amended Complaint, and is only pursuing its claim to payment from Mr. Cross under the Cross Note as alleged in Count II.
[4] The Ennis Note, signed contemporaneously with the workout agreement and the Cross Note, calls for the applicability of Rhode Island law. Although Mr. Cross testified to his recollection of negotiations which he believed resulted in an agreement to apply Virginia law, no note, agreement, or even a copy thereof has been produced containing such a choice of law provision. It seems out of character and incredible for a sophisticated banker such as Mr. Cross not to have retained a copy of the note or agreement. At trial, he offered no explanation as to why he was unable to locate a copy of the pertinent documents. Accordingly, the Court finds that the applicable law is that of Rhode Island. A determination of choice of law in these circumstances is somewhat academic, since it appears that the pertinent provisions of the Uniform Commercial Code are identical in both Virginia and Rhode Island.See Va. Code Ann. §§ 8.3A-301, 8.3A-203.
[5] Defendant has argued that the Cross Note is not a negotiable instrument if it is "subject to" or "governed by" a separate agreement. The mere fact that the maker signed the note pursuant to a separate workout agreement does not render the note nonnegotiable. In this case the note is a separate and unconditional promise to pay, not subject to any conditions or promises set forth in a separate agreement. Accordingly, it meets the definition of a "negotiable instrument." See § 6A-3-104; see alsoAetna Inv. Corp. v. Shuman's Studio, 51 R.I. 299, 300, 154 A.271, 272 (1931).
[6] Mr. Petrarca testified that he is currently a Vice President of Citizens Bank of Massachusetts and has current responsibilities as a loan workout specialist. He further testified that he has worked for Citizens Bank of Massachusetts for about eight years, suggesting that he commenced his affiliation with Citizens in 1996 or 1997, some four or five years after the execution of the Cross Note. He further admitted that he has no personal knowledge either of the loan workout with Citizens, the takeover of OSB by RTC, or the alleged transfer of the Cross Note to the Plaintiff. In addition, in response to questions from the Court, Mr. Petrarca testified that the entity he works for, Citizens Bank of Massachusetts, is a subsidiary of Citizens Financial Group. There was no testimony as to the relationship, if any, between the Plaintiff, Citizens Bank, and the entity that employed Mr. Petrarca.
[7] Mr. Petrarca testified:
 "Q. You just testified that you have familiarity that Citizens Bank obtained obligations of Old Stone Bank, correct?
A. Correct.
Q. And how did you get — gain that familiarity?
 A. Well, as I said, when I transferred to Boston, we were — I was handed a portfolio which consisted of several Old Stone Bank loans. Reviewing the file, you see that the original maker was Old Stone Bank, so I'm familiar in that sense." Tr. at 6.
He further testified that he "understood" that Citizens "purchased the assets of Old Stone Bank from the Resolution Trust Company", but did not testify as to the basis for his "understanding." Tr. At 7.
[8] Plaintiff relies on the case of New Bedford Inst. For Sav. v.Calcagni, 676 A.2d 318 (R.I. 1996) in support of its position that as a transferee of the Note, it has the right to payment. Unlike the instant facts, however, the Bank in the Calcagni case proved without contradiction that it took title to the instrument by virtue of a valid purchase — and — assumption agreement with the FDIC, which agreement formed part of the bank's evidence. No such agreement was presented by the Plaintiff herein.
[9] The counterclaim was filed by Mr. Cross at a time when he represented himself pro se. He also filed a "cross-claim" against counsel for the Plaintiff alleging a similar claim of misrepresentation. It appears that the so-called "cross-claim" was never accompanied by proper joinder or service of process, and is therefore not properly before the Court. Although the file does not reflect that the counterclaim was reasserted by the Defendant in any response to the amended complaint, the Plaintiff did not object to the presentation of evidence on that basis, and therefore it can be said that the issue was presented at trial with the implied consent of the Plaintiff. See Super. Ct. R. Civ. P. 15(b);Fram Corp. v. Davis, 121 R.I. 583, 591-92, 401 A.2d 1269, 1274-75
(1979).
[10] In his post trial memorandum, the Defendant also argues for imposition of Super. Ct. R. Civ. P. 11 sanctions. The crux of Defendant's claim for sanctions is that the Plaintiff made inconsistent demands under two distinct sets of obligations when it knew or should have known that the Cross Note executed as part of the workout superceded the obligations under the Cross guaranty. Again, evidence is lacking as to the degree of knowledge the Plaintiff acquired either from the RTC or the OSB relative to the workout negotiations and whether the execution of the new notes entirely superceded enforcement of the earlier guarantees. At any rate, our rules of civil procedure permit pleadings to allege claims that are inconsistent or alternative in the same pleading. See Super. Ct. R. Civ. P. 8(e)(2); see also 5 Wright Miller, Federal Practice Procedure3d, § 1282 (2004). Imposition of sanctions under Rule 11 is subject to the exercise of the Court's discretion. See Lett v. Providence JournalCo., 798 A.2d 355 (R.I. 2002). The Court does not believe that the actions of either the Plaintiff or its counsel arises to the level of sanctionable conduct.